All right, the first case we're going to hear is Rodriguez v. Ratledge, and Mr. Schabelsky, we'll hear from you. If it pleases the Court, my name is Mike Schabelsky, along with William Wright. We represent the appellant Osiel Rodriguez. The summary judgment order in both cases should be reversed. It should be reversed for a straightforward reason. The Bureau of Prisons violated Mr. Rodriguez's due process rights by legally convicting him in an administrative proceeding of an attempted escape charge. Mr. Rodriguez has valid claims that the district court short-circuited. Mr. Rodriguez is entitled to prevail in those claims and is entitled to relief. And what would that relief be? He has already been sent to Supermax. Has he not? He's already been transferred? He has. So what specifically are you asking for in terms of relief? Yes. Reversal, vacatory reversal of the grants of summary judgment, summary judgment on liability in favor of Mr. Rodriguez, and forms of relief, an order directing the Bureau of Prisons to restore the 41 days of good time credit that's lost and to transfer him out of ADX Supermax. Well, let's assume there was a due process violation. You can't use 2241 to get monetary damages, and he got the same punishment either way. So where's the harm? Yes, there are two harms, Judge Floyd. First, the 41 days of lost good time credit remain as a sanction only because of the unlawful second conviction. Yes, the 41 days were originally imposed because of the narcotics conviction, but that conviction has been reversed by the Bureau of Prisons' own action. So the only reason now the 41 days of good time credit are lost are because of the unlawful second conviction. It seems to me that if the second hearing was illegal, you don't challenge the first hearing. The lost time of 41 days was legally entered. Now, if you say the second one reversed the first one on the conviction, then you have to accept that part of it. You are accepting that part of it, but then you're saying they could not have found liability for the escape. You can't have it both ways. If the second one reversed the first one, properly reversed it as you argue, then you're stuck with the second one, and there's no different liability. In other words, still 41 days. The question is, the 41 days was legally entered on the first one. And your argument is the second one was an improper trial. If that's so, then it's ineffective, and the first one stands. So I don't see where the question that Judge Floyd raised is harm. On that, Your Honor, Mr. Rodriguez has challenged, through his administrative appeals and in his various habeas petitions, the conviction on the attempted escape charge. The Bureau of Prisons, on its own initiative, vacated the narcotics charge, finding him not guilty, that he did not in fact commit that charge. But they did that following the second hearing. Yes. And the second hearing is the infected hearing, according to you. But the government has not brought any type of cross appeal or claim of its own to reinstate the narcotics conviction. Well, it doesn't have to reinstate it. If you were successful in vacating the second hearing because it was illegal, it violated due process, and the second hearing was a nullity. What has challenged Judge Niemeyer is the second, the conviction on the attempted escape charge. Mr. Rodriguez did not appeal the vacatur of the conviction. Well, he didn't appeal that anyway. That's a very serious problem you have, that he did not exhaust his remedies on the first petition. I'd like to address that, but I also want to finish Judge Floyd's question. And I have another one to actually throw in there. I'm sorry, because I'm having a little trouble with the facts. At no point that I could tell did Rodriguez challenge the facts regarding his plans to escape in the information utilized by the hearing administrator, which explained his plans in some detail. His selection of an inmate who looked like him. Well, in the first hearing, Judge Duncan, the hearing officer found that charge, based on the alleged scheme to do the switcheroo, to be far-fetched and hard to believe, that the confidential informant that was the basis was not credible. Now, in his statement, I think it's SJ27, he says, I'm not saying I did not attempt to escape from these facilities. I'm just saying that I never used or attempted to use any violence to carry out his plans to escape. And he had notice. There was a hearing. He had an opportunity to be heard. He unveiled himself of that. A review of the disposition on appeal. What was he denied? He was convicted in a second. I'm talking about the second one. You're asking about the second hearing. Yes. The second hearing should never have been held at all. So it doesn't matter that he had notice of the second hearing and a right to participate in the second hearing. But that has to underlie your due process claim. Yes, that there should have been no hearing at all. There should have been no second trial and, therefore, no conviction. That's a unique argument in a due process claim, that there shouldn't have been a hearing, an opportunity to be heard, an opportunity to appear and speak. No, there was because the process had been played out. Actually, it hadn't been played out. And that's part of your argument. And that's part of the catch-22, I think, we seem to be finding ourselves in. Well, let me see if I can help clarify that. Because you have to go back to the Bureau of Prisons regulations. The Bureau has established a regulatory program, the purpose of which, and the regulations so state, is to define the process that the Bureau must follow to impose sanctions on inmates. Continuing the regulations provided at this scheme is to make sure that discipline is not imposed in an arbitrary and capricious manner. The regulations are highly prescriptive and prescribe a process, a series of steps that the Bureau must follow. That process was followed and resulted in a hearing at which the hearing officer determined the escape charge was far-fetched, baseless, and acquitted Mr. Rodriguez. Under the department's regulations, that stopped the process. Let's talk about the transfer affecting the liberty interest. Tenth Circuit, where Supermax is, has said the standard would be an atypical and significant hardship, and they've found, at least in the Tenth Circuit, that a transfer to Florence doesn't meet that standard. Using a different standard for that liberty interest violation than this Fourth Circuit controlling standard in the Infama case. This Court has held the baseline determination to decide whether or not the transfer or change in confinement conditions implicates a liberty interest is to use the general prison population. In the Tenth Circuit case that you're referring to, Your Honor. I'm sorry, I don't understand your response to that question. Would you mind repeating it or clarifying it? Yes, ma'am. In the Infama decision from this Court at 791 F. 3rd 517, this Court held, and I quote, the general population is the baseline for atypicality for inmates who are sentenced to confinement in the general prison population. And I'm familiar with what I'm asking is how does that, what factually distinguishes the general population that you're relying on for purposes of your argument? Right. Well, there's no, the government does not dispute that the conditions of confinement at ADX Supermax are significantly more restrictive than the U.S. Lee general prison population where Mr. Rodriguez was imprisoned. In fact, the Resic case itself, Your Honors, states that ADX is the most restrictive and secure prison operated by the Bureau. Its conditions are undeniably harsh. That's not me saying that. Those are quotes right out of the Tenth Circuit opinion. Well, suppose, looking at Infama, his transfer on his face appears to be indefinite, but we know from prior experience that he's been there before and he got sent back to another prison. So what in Infama is, conditions are particularly severe, indefinite, or extraordinary in duration? I mean, that's what we'd be looking at, wouldn't we? Yes, Your Honor. And again, there's no dispute about that. The conditions of confinement in terms of how many hours a day a prisoner must stay in the cell, the limited amount of contact with other prisoners or family members, the limited opportunities for recreational activities, et cetera, right down the line, the entire purpose of ADX Supermax is to be severe and atypical. Well, it's to be restrictive because the transfer occurs in atypical situations. In this case, in the case of an inmate who had made more than one attempt to escape. But I think that rather proves the point, Your Honor, is that the ---- The distinction is simply a reflection of the nature of the offense that it is designed to remedy. But that is not the relevant standard in this court. Mr. Rodriguez was in the general prison population at U.S. Prison Lee and was transferred to ADX Supermax because of the unlawful second conviction, the conviction following the second rehearing. But for that conviction, he would not have been transferred. And there is no question and can be no question under the Bureau's procedures, policies, and regulations that a prisoner cannot be transferred based on false, inaccurate information. If the second conviction is invalidated as it should be, then the transfer necessarily must be invalidated. What steps did he take after the second conviction was entered to have it reviewed? He took an administrative appeal timely through both levels of the Bureau. I thought he filed his habeas first. No, Your Honor, that was after the first hearing. All right. But which means that at the time he filed his habeas, he had not exhausted it. That is correct. At the time he filed the first habeas, he had not yet exhausted it. But there's two points, Your Honor, that I think make the exhaustion issue moot here. First is that before the district court considered the merits of his petition, his first habeas petition, he had, in fact, exhausted his administrative remedies. Except we don't recognize that. Haven't we held you don't recognize those subsequent events in a habeas petition? I don't believe so, Your Honor. And certainly the government has never pointed to any case involving that. And this Court's decision in the, I pronounce it, DragonEyes case, as we cited in our brief, certainly seemed to suggest that the premature filing could be cured if the administrative appeal process had been played out before the merits determination. But in any event, Judge Niemeyer, the second habeas petition was filed after Mr. Rodriguez exhausted his administrative remedies. All of them. The government doesn't contest that. In fact, they agree with that. And so we find ourselves here as a practical matter in exactly the same posture that the government would have happen, which is on the first petition, dismiss it without prejudice so Mr. Rodriguez can then refile his habeas petition and raise all these claims again. That's exactly what he did in the second petition. Let me ask you this. I want to get back to the very first question that Judge Duncan asked you. If the first hearing, you don't challenge the first hearing in the first petition. He got his 41 days, good time credits, knocked off. That was legal. And that remedy was a legal remedy. He is now in Supermax. And the question is, what remedy, what relief do you want at this point in time? He's already been transferred to Supermax, number one. Number two is 41 days were appropriately found in the first hearing. Your argument is the second hearing vacated the first, but the second hearing you keep arguing is violated due process and therefore is a nullity. So you can't rely on that under your argument. So you're stuck with the 41 days as legal. And that's in place. And the transfer to Supermax has already occurred, and that's where he is. But the transfer, Your Honor, can be undone. But you didn't ask for that, and that was why I asked. There's nothing in your brief that talks about the transfer. Yes, in the first habeas petition, he had not yet been transferred. At the time of the second habeas petition, he, in fact, had been transferred. That's right. After a hearing that you want to erase from existence. But the transfer was challenged in the second habeas petition. That was the form of relief. The district court granted the government summary judgment on the merits of that claim and so didn't address the form of injunctive relief to take to order the department to undo the transfer. Obviously, a number of steps would have to be done with what prisons are available to receive him. So they can't be prescriptive in that sense. But he is asking for reversal of the transfer.  You've got some rebuttal. We'll see you back. Thank you. Mr. Mott. May it please the court, good morning. I am Joe Mott. I'm an assistant U.S. attorney in Roanoke. With me at the council table is Mitchell Hanson, who is a third-year law intern in our office and did the lion's share of the work on our reply brief. I'll address the issues in the order in which they were brought up, unless the court wants to interrupt me and ask further questions. Let me ask you about jurisdiction first. He filed the petition, the first petition, while he was at Lee. He files the second one while he's at Supermax. So is there any problem with that? Judge, I believe the second petition was filed on December 22nd. So he was still at Lee? 2015. He was in transit to Supermax. He arrived there January 9th of 2016. So he was in transit between F.C.I. Lee, U.S.P. Lee rather. He'd still be in the custody of Lee until Supermax takes him? I believe so. Okay. No problem. He went from Lee to Atlanta to Oklahoma to Colorado. It's an appealing argument to say, well, you know, he exhausted his remedies. They found adverse to him in the administrative proceeding. And, you know, no harm, no foul. We should excuse it. And the government will concede that this court has the power to excuse the failure to exhaust. And that's addressed in the DragonEyes case cited by both parties. But it's just not that type of case where it should be excused. The failure to exhaust is not jurisdiction. I can't get the word out. Jurisdictional. It's imposed to ensure orderly administrative proceedings and orderly judicial proceedings. And it's done for very important reasons to enable the administrative body to take corrective action, to develop a factual record should there be judicial review, to conserve judicial resources, to allow the judicial branch to make meaningful decisions based on a full record. And you can't just ignore all those and say, well, he eventually exhausted them after he filed his lawsuit. Counsel, does Mr. Rodriguez have a protected liberty interest in not being transferred to ADX? No, not under prevailing law. Perhaps you could address that. All right. Now, probably the most prominent case against our position is the Income Act case involving the South Carolina Supermax system. Why do you argue the case isn't supporting your position first? Well, I was going to draw a distinction. I don't understand why you're giving it away. Well, no, that's the high watermark for the petitioner's case. The question was, is it a liberty interest? And you said no. So now she's asking for your support. All right. Well, the point is that there's very important distinctions between the system. Why don't you start with your case? All right. Your support, your position. I asked for your position. I think we've heard from opposing counsel about income. So let's start with the basis of your assertion that there is no protected liberty interest in being transferred to ADX. All right. Because it's not an atypical and significant hardship as construed by prevailing precedent. The RESAC case in the 10th Circuit examined that on a full record and determined that it was not an actionable due process violation, that it was not a significant and atypical hardship, and it did so for very factual reasons. There are distinctions between that and the South Carolina case. Why do you keep going back? Why are you so defensive? Has the Supreme Court addressed this issue? Not Florence ADX in particular. However, the 10th Circuit has. Transferring somebody from one prison to another, which is a higher level security prison. Yes, it's addressed that issue, and Wilkinson is probably the most prominent case. Why don't you rely on Wilkinson and lay out the standard in your response? Well, and Wilkinson, I believe, held that it could be actionable, but that the process required met due process standards. Why is your answer to my question no? Just two affirmative declaratory sentences. Because the Florence ADX system is not a significant and atypical hardship to the normal prison population. And there are a lot of facts that support that, but that's the short answer. And that's before a prisoner has a due process right, there has to be an infringement on his due process right. And that's just one of the normal incidents of prison life. You can end up in Florence ADX, and it's not a violation of your due process rights. It's a chance you take when you go to prison, and inclusive in being sentenced to prison. You know, there have been schemes where there's no right to participate in the process, or there's no way to get back out. But that's not Florence ADX. I think it's clear from the record that there is a step down program that's addressed in the Rezac case. And this petitioner demonstrates that factually. He went there in 2006, and by 2013 he was back at USP Lee in a less restrictive environment. And those are the factual matters that both Rezac and other cases that have addressed the issue rely on. So number one, there's no actionable due process violation on the transfer. And number two, even if there were, this process comported with due process requirements. Now the petitioner's argument basically is the first hearing is wrong. They relied on it on the second hearing. The first proceedings at USP Lee were wrong. They relied on that in the transfer proceedings. Therefore, you have to set aside the transfer to Florence ADX. But that's belied by the record in this case. Both the regulations and the DHA, the Disciplinary Hearing Administrator, his report speaks in terms of conduct, not in terms of conviction. So that's a word that's used a lot by the petitioner, trial conviction. But it's not a setting where three escape strikes and you're out and you go to Florence ADX. It's based on conduct, and the whole record is constructed in terms of conduct. It's not a, if you're found guilty of this escape attempt, then you're automatically sent to Florence ADX. That's not the case. There's a separate proceeding in which a number of parties weigh in. The warden has input. There are medical records, psychological records, et cetera. And then ultimately, the regional director can vote. Wasn't part of the test in EnCUMA, first you have to establish a protected liberty interest, and second, if there was minimally adequate protection to protect that liberty interest? Yes, ma'am. Am I understanding you to refer to the second part of the EnCUMA test in the response you are giving now? The hearing, the opportunity to be heard, Mr. Rodriguez's appearance, et cetera? Yes, ma'am. We're saying we went at both levels. Number one, there's no protected liberty interest so as to be actionable in a district court. And number two, even if there were, that the due process protections afforded the petition are more than met the standard for due process. So that's our position. We went at both levels of that analysis. Anything else? Nope. I have some time left. All right. Mr. Svobosky. I'd like to address both the liberty interest and the due process aspect of the transfer proceedings, Judge Duncan. On the liberty interest, in the Supreme Court jurisprudence in Wilkins, in Sandin v. O'Connor, the Supreme Court has made clear that a liberty interest can be created against being transferred if the authority, the government, has created a system to give protections to the inmate against those transfers. We have that here. There is no dispute. The government has program statement P5100.08. Excerpts are in the addendum to the briefs. The government has established this very thick set of program regulations and procedures to define the criteria and process for being transferred to ADX Supermax. Clearly, there is a liberty interest created by the Bureau of Prisons against arbitrary transfer. On whether or not then due process was received in the transfer proceedings, I asked the court to look at page 30 of the supplemental appendix. This is the hearing officer's report from the transfer proceedings. And he states there very clearly, it appears about in the middle of the page, that Mr. Rodriguez could not contest in the transfer proceeding his conviction on that attempted escape charge. So at the end of the day, it doesn't matter whether he got notice of the transfer hearing, had an opportunity to be heard at the transfer hearing, or anything else. He couldn't contest the factual basis that provided the necessary predicate for him to be transferred, the unlawful conviction on the attempted escape charge. He did speak to it though. And I read, I was reading from the supplemental appendix in the section where he is allowed to speak. And he specifically addresses it. The hearing officer characterizes that. No, I'm talking about Mr. Rodriguez's words. And it's on page 27 of the supplemental appendix. Where he himself speaks to. Yes, the statement on page 27 of the supplemental appendix. Right. Where the quote attributed to him says, I am not saying I did not attempt to escape from these facilities. Right. I only didn't intend to, I didn't use violence. In context, Your Honor, I think we read it as fair to say what that statement is referring to, is the two prior attempted escapes from the other institutions that resulted in his prior transfer to ADX Supermax. It is quite clear from the record, Your Honor, that Mr. Rodriguez has always contested this third attempted escape charge. He made that clear in the first trial that he had, as well as in the second trial. I think, Your Honor, the statement that you're referring to is referring to those two earlier attempted escape convictions from several years prior, not the one that resulted from the illegal second hearing. But what about the, if you look at the factual description on SJ-28, it is detailed. It's all detailed, yes, Your Honor. But on... And I don't recall that Mr. Rodriguez spoke to any of those facts. Yes, but in the hearing officer's own report, as I mentioned, he states that Mr. Rodriguez, the purpose of the hearing is not to contest whether or not he committed the third attempted escape. All right. So he had no opportunity in... The hearing officer says they're not there to debate the innocence or guilt. He's been convicted as a result of the second illegal hearing. That becomes an accepted factual predicate. And the necessary predicate, and the only reason he was transferred to ADX Supermax, is as a consequence of that illegal conviction. Had that not happened, he would not have been transferred. There's no dispute about that. And, Your Honor... Are you saying, excuse me, I really am... This wasn't clear to me, that the Bureau of Prisons could not have transferred him based on the facts that are laid out in some fairly damning detail? The point is, Your Honor... No, no, my question was, could the Bureau of Prisons have done so? That was my question. I don't know because that's not what they did. They didn't apply res judicata, that the fact had been determined. They made an independent finding. And in their findings, when questioned about the previous escape attempts, he did not dispute that he made the attempts to escape. Just that he did not use or attempt to use any violence in those attempts. These are findings. He said that he had since retired from this type of behavior. He further stated that while he was certain he would be recommended for ADX placement, he expressed his wishes that he wanted the documents he presented at the hearing to be included in the record. The point is, there's two pages of facts discussed, and there's nothing in this record that suggests they're applying a doctrine of res judicata that somebody else had determined them, and I'm not going to review them again. The court asked him these facts, and he had commented on them and made findings of fact at the second hearing. Your Honor, I respectfully disagree on page 30 of the supplemental appendix. The hearing officer writes, this hearing was not intended to determine whether or not he, Mr. Rodriguez, committed prior charge prohibited acts, but simply whether or not he met the criteria for the referred placement. They did apply res judicata. Your argument was that he had three escape attempts, and the first two he had already paid for and should not be considered. And the fact is they did consider them because of the risk, not on punishment. Here's a guy that has tried three times to escape undisputedly. No, Your Honor. That's what he said. No, those statements refer to the two prior convictions for which he had already been sent to ADX Supermax and served his time there. I understand that this is not a repunishment. This is a determination about a risk, and when a man has attempted to escape two times earlier, that increases the risk and should go into the consideration of whether he needs a more secure prison. The point, Your Honor, is he had already been sent to ADX Supermax and released from ADX Supermax as a consequence of those. I understand that argument, but that argument sounds in the notion that he's been punished for that and he can't use it again. The answer is if he tries to escape 17 times, when it comes to the 18th time, they're going to put him in a secure prison again. I understand, Your Honor. Because he's tried all those times, he has that risk factor. But here, the third conviction, that is the 18th one, that hypothetical, was unlawful. But for this third conviction, that was a consequence of the second hearing. My question isn't about the conviction. My question is about the independent fact-finding at the transfer hearing. There was independent factual finding. He spends two pages talking about those facts. He repeats what's in the incident report. And Rodriguez expresses himself on those facts. Referring to the earlier convictions, but clearly on page 30, the hearing officer says they are not there to revisit the facts. They're not. They're trying to assess whether it's appropriate to send him to a more secure prison. Right, on the assumption or accepting the third conviction. He didn't do that. He didn't say, I'm basing it on that finding. He says, I'm not here to reverse that finding or to assess that finding. I'm here to decide the facts of whether we transfer. Right, but had there not been the third conviction, there would not have been the basis to transfer him. I think that's incorrect. It's not supported by the record. Well, then, in any event, Your Honor, you have factual disputes on this and the district court shouldn't have granted summary judgment. That may be correct, but I don't think the record compels the conclusion that you're presenting to us. That was my only point in referring back to the supplemental. Then there should be a remand to develop the factual record since the district court short-circuited that process. Thank you, Your Honor. All right. We'll come down in Greek counsel and proceed. Mr. Schabelsky, you were court appointed. Yes, sir. I want to recognize that. That's an important service, as you know, and we appreciate your service to the court. We'll come down in Greek counsel and then proceed on to the next case. Thank you.
judges: Paul V. Niemeyer, Allyson K. Duncan, Henry F. Floyd